# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 16-551V
(not to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * | | Chief Special Master Corcoran |
| A.S., * | | |
| *by his father and natural guardian*, * | | |
| GUY STERLING, * | | |
| * | | |
| Petitioner, * | | Filed: January 3, 2020 |
| * | | |
| v. * | | |
| * | | Autism Spectrum Disorder; Attorney's |
| SECRETARY OF HEALTH * | | Fees and Costs; Objective Evidence; |
| AND HUMAN SERVICES, * | | Reasonable Basis |
| * | | |
| Respondent. * | | |
| * | | |
| * * * * * * * * * * * * * * * * * * * * | | |

*Clifford J. Shoemaker*, Shoemaker, Gentry & Knickelbein, Vienna, VA, for Petitioner.

*Voris E. Johnson*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION DENYING ATTORNEY'S FEES AND COSTS[1]

On May 5, 2016, Guy Sterling filed a petition on behalf of his minor son, A.S., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] (ECF No. 1). He initially alleged that "multiple vaccines" A.S. received on May 7, 2013, and July 26, 2013, respectively, caused or significantly aggravated unspecified injuries. *Id.* at 1. He later amended his claim to specify that the pneumococcal conjugate PCV-13, Hemophilus

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

influenzae type B (PRP-T), and diphtheria-tetanus-acellular pertussis vaccines administered to A.S. on May 7, 2013, caused neurologic neglect syndrome, expressive language disorder, unspecified disorders of the nervous system, and immune dysfunction. Am. Pet. at 3, filed Apr. 14, 2017 (ECF No. 24).

Asserting that A.S.'s proper diagnosis is autism, Respondent moved to dismiss Petitioner's claim with the filing of his Rule 4(c) Report on June 2, 2017. (ECF No. 27). The parties disputed A.S.'s diagnosis, and each filed expert reports in support of their positions. After reviewing these reports, I decided to resolve this matter without hearing. The parties filed briefs in support of their respective positions in the spring of 2019. *See* Mem. in Supp. of Entitlement, filed Mar. 29, 2019 (ECF No. 63) ("Mem."); Resp't's Resp. to Pet'r's Mem. in Supp. of Entitlement, filed May 9, 2019 (ECF No. 65) ("Opp."); Reply to Resp't's Resp. to Mem. in Supp. of Entitlement, filed May 28, 2019 (ECF No. 66) ("Reply"). After reviewing the medical records and parties' submissions I issued a decision dismissing Petitioner's claim and it was appealed. (ECF No. 68).

After the dismissal, Petitioner filed a barebones fees application, requesting a total of $49,760.28 in fees and costs for work performed from March 10, 2016, to October 9, 2019. Petitioner's Application, filed on Sept. 29, 2019 (ECF No. 71).[3] Respondent reacted and opposed Petitioner's application. Respondent's Opposition, filed on October 17, 2019 (ECF No. 73). Respondent argued that Petitioner has "failed to establish a reasonable basis for" their claim. *Id.* at 1. Petitioner did not file a reply.

For the following reasons I **DENY** Petitioner's motion for fees and costs, because I find that his claim lacked reasonable basis from its inception.

I.   **Factual and Procedural History**

*A.   Filing of the Case and Proceedings Under Special Master Dorsey*

This case was initially assigned to former Chief Special Master Dorsey. (ECF No. 4). The Petition did not allege a specific injury or name particular vaccines. *See* Pet. at 1. Rather, it vaguely alleged that A.S. had received multiple vaccines on two dates and suffered injuries as a result. *Id.* The Petition also stated that it was "being filed before the receipt of all of the medical records in order to ensure that it is filed" within the statute of limitations. *Id.* After Petitioner filed his statement of completion in late November 2016 (ECF No. 15), Special Master Dorsey scheduled a status conference.

That status conference was held on January 12, 2017. (ECF No. 17). Special Master Dorsey asked Petitioner whether A.S. had "received a definitive diagnosis and whether that diagnosis is potentially on the autism spectrum." *Id.* at 1. Petitioner answered that A.S. had not been so diagnosed, but had instead received differing diagnoses from his speech therapist and occupational therapist. *Id.* Afterwards, Special Master Dorsey issued an order which noted her preliminary view

---

[3] The application stated the amount requested and contained bills and receipts. *Id.* But it did not otherwise comply with the vaccine guidelines regarding information to be contained in fees and costs motions. *Compare* Pet. at 1–2, with *Guidelines for Practice Under the National Vaccine Injury Compensation Program* ("*Guidelines for Practice*") at 70–71 (revised August 22, 2019) found at https://www.uscfc.uscourts.gov/sites/default/files/ GUIDELINES%20FOR%20PRACTICE%20-%208.22.2019.pdf.

that A.S. may have autism, emphasized that claims of vaccine-caused Autism Spectrum Disorder ("ASD") have consistently been unsuccessful in the Vaccine Program, and directed Petitioner to amend his petition to clearly identify A.S.'s diagnosis. *Id.* at 1–2. Accordingly, Petitioner was on notice at this time—less than a year from the date of filing—that the claim might lack reasonable basis.

Petitioner amended his petition on April 14, 2017, alleging injuries including neurologic neglect syndrome, expressive language disorder, unspecified disorders of the nervous system, and immune dysfunction. Am. Pet. at 3. Petitioner also more explicitly denied that A.S. had autism. *Id.* at 3. In a status report filed the same day, Petitioner stated that he had "never been told that [A.S.] is on the spectrum." (ECF No. 25). Respondent filed his Rule 4(c) Report on June 2, 2017, arguing that A.S.'s medical records suggested a diagnosis of autism, and requesting the claim's dismissal. *See* Rule 4(c) Rep.

Special Master Dorsey conducted another status conference on August 17, 2017. (ECF No. 28). Petitioner now (and contrary to his representations nine months prior) *conceded* that A.S. had been diagnosed with autism. *Id.* Special Master Dorsey cautioned Petitioner that "without a specific vaccine-related injury other than autism, this case lacks reasonable basis," and warned that "unless [P]etitioner can demonstrate from the medical records that A.S. suffered a vaccine-related injury other than autism," she would not reimburse attorney's fees or costs, including expert costs. *Id.* She also clarified "that an autism diagnosis does not preclude a petitioner from recovering in the Program, as a child with autism could suffer a vaccine-related injury, such as a Table injury. However, and as petitioner's counsel is well aware, autism *alone* has never been found to be a compensable injury." *Id.* at 2 (emphasis added).

The following month, former Chief Special Master Dorsey ordered Petitioner to show cause why his case should not be dismissed. Order to Show Cause, filed Sept. 25, 2017 (ECF No. 30). The order to show cause emphasized that "[P]etitioner and his counsel have been disingenuous with the court about A.S.'s autism diagnosis," as the medical record established that A.S. had been diagnosed with regressive autism by Dr. Richard Layton in March 2015—over *one year* before the claim's filing. *Id.* at 3. Former Chief Special Master Dorsey concluded: "Based on the medical records, petitioner's lack of candor with the court, and petitioner's inability to follow court orders and/or demonstrate that A.S. suffered a recognized and compensable vaccine-related injury, *the case lacks reasonable basis*." *Id.* at 4 (emphasis added).

Petitioner responded to the Show Cause Order with a status report on October 24, 2017. (ECF No. 31). Chief Special Master Dorsey thereafter issued an order addressing that status report, in which she noted that Petitioner had again failed to identify A.S.'s specific diagnosis. (ECF No. 33). While reiterating her warning that the case would lack a reasonable basis unless Petitioner could demonstrate that A.S. suffers from a specific vaccine-related injury, she nevertheless permitted the case to move forward. *Id.* at 2.

Petitioner subsequently filed reports from two experts on December 26, 2017: the first from James Lyons-Weiler, Ph.D., and the second from Toni Bark, M.D. Respondent also filed reports from two experts: one from Max Wiznitzer, M.D., and another from Jeffrey Johnson, Ph.D.

B.  *Reassigning and Dismissal*

3

The case was reassigned to me after all expert reports were filed. (ECF No. 53). I held a status conference with the parties on November 1, 2018, at which time I too expressed similar concerns similar to Special Master Dorsey about the claim's viability based on my review of the record. First, I determined that Petitioner had "been on notice of the deficiencies in his claim for a significant period of time"; and second, I determined that, based on my preliminary review of the record, Petitioner's claim lacked reasonable basis. *Id.* at 3. I noted that my second determination was made regardless of A.S.'s diagnosis—ASD vs. developmental regression. *Id.* I noted that autism claims were historically unsuccessful in the Program. *See id.* (citing several unsuccessful autism claims decided years before Petitioner filed his claim). In addition even if A.S.'s condition was characterized as developmental regression—Petitioner's favored diagnosis—the claim still lacked reasonable basis because the record did not support the conclusion that A.S. "experienced an encephalopathy . . . ." *Id.* I informed the parties of my intention to resolve this matter based on written filings. *See id.*

The parties filed briefs in support of their respective positions in the spring of 2019. *See generally* Mem.; Opp.; Reply (ECF Nos 63, 65, 66). Petitioner's Memorandum was accompanied by a supplemental report from Dr. Lyons-Weiler. Lysons-Weiler Supp. Rep. (ECF No. 62). I subsequently issued a decision denying entitlement on August 27, 2019. Decision (ECF No. 68). Therein I recounted the factual and procedural history of the case, noted that Special Master Dorsey had warned several times that the case likely lacked reasonable basis, and observed that I had made similar warnings. *See* Decision at 6.

I then analyzed Petitioner's proffered theories in favor of compensation. *See* Decision at 11–15. First, Petitioner's claim that A.S. suffered from vaccine caused neurologic neglect syndrome, expressive language disorder, unspecified disorders of the nervous system, and immune dysfunction. *Id.* at 11–12. This theory was based on the disputed diagnosis that A.S. suffered from a vaccine induced encephalopathy that either caused or significantly aggravated A.S.'s condition. *See id.* at 12–13. But there was scant evidence to support the diagnosis of encephalopathy. *See id.* at 13. Specifically, only the billing record from A.S.'s treating physician noted encephalopathy, but *none* of the physician's notes mentioned such a serious diagnosis. *Compare* Ex. 16 at 54–55 (billing statement with check mark next to "encephalopathy"), *with* Ex. 16 at 3–21 (Dr. Layton's notes from several visits with A.S., making no mention of encephalopathy). Thus, I found that Petitioner's first theory—post-vaccination encephalopathy—could not succeed on such weak support. *See* Decision at 13–14.

Second, I assessed Petitioner's other claim, alleging causation-in-fact or significant aggravation of some other neurologic condition. Dr. Lyons-Weiler admitted that this theory relied on "the very same processes known to be involved in the development of autism." Lyons-Weiler First Rep. at 5; *see also* Decision at 14. In light of this my reasoning was "influenced by the many prior Vaccine Program cases involving allegation of vaccine-caused ASD-like disorders." Decision at 14. After outlining those cases I found that "Petitioner's causation theory is

fundamentally at odds with the sound reasoning found in so many well-reasoned Vaccine Program decisions." *Id.* at 15.[4]

I thus concluded that Petitioner's theories were fundamentally flawed because of the weight of the case law against them and the lack of evidence needed to corroborate their diagnosis. I also found that my experience involving similar claims "strongly informs my conclusion not only that this claim could not succeed where countless others failed, but that it lacks the foundational objective support for its assertion in the first place." *Id.* at 16. Thus, I dismissed the claim. *Id.*

## II. Analysis

### A. Reasonable Basis Standard

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4–5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5–6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017); *see also Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)). The standard for reasonable basis is lesser (and inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases with reasonable basis (because they have objective proof supporting the claim) can nevertheless still fail to establish causation-in-fact. *Braun v. Sec'y of Health & Human Servs.*, 144 Fed. Cl. 72, 77 (Fed. Cl. 2019).

The Court of Federal Claims recently clarified the standards used to evaluate whether a claim has reasonable basis. *Cottingham v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 567, 578 (2017), *appeal docketed*, No. 19-1596 (Fed. Cir. Feb. 26, 2019). A special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id.* at 574. Additionally, the following factors are considered when determining if there was a reasonable basis for the claim: (1) factual basis, (2) medical support, and (3) the attorney's diligence in bringing the claims. *Carter v. Sec'y of Health & Human Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017).

Reasonable basis—or the lack thereof—has been increasingly discussed in claims involving ASDs. As I explained in my decision, the Omnibus Autism Proceedings ("OAP"), which concluded in 2010, decided unanimously that there was no persuasive evidence that the MMR

---

[4] I also noted that: (1) Dr. Lyons-Weiler cited literature that did not supported his stated positions; (2) the meandering and confusing nature of his reports; (3) disregard of scientific principles; and (4) Dr. Lyons-Weiler "appears to be wholly unqualified to opine on the question of vaccine causation." Decision at 15.

vaccine or thimerosal-containing vaccines caused autism.[5] Since then, cases bringing similar claims have been uniformly rejected, and thus "Vaccine Act counsel [have been] put on notice" that if counsel pursue, to a decision, theories linking vaccines causally to ASD, and their evidence proves to be highly unpersuasive," then special masters will find that the claim was brought without reasonable basis. *See, e.g.*, *Sturdivant v. Sec'y of Health & Human Servs.*, No. 07-788V, 2016 WL 552529, at *20 (Fed. Cl. Spec. Mstr. Jan. 21, 2016) (footnote omitted) (discussing the history of autism cases in the program and how those cases have consistently fallen "*far short* of plausibility" since the OAP concluded (emphasis in original)); *Hardy v. Sec'y of Health & Human Servs.*, No. 08–108V, 2015 WL 7732603, at *33–35 (Fed. Cl. Spec. Mstr. Nov. 3, 2015); *Long v. Sec'y of Health & Human Servs.*, No. 08–792V, 2015 WL 11011740, at *19–20 (Fed. Cl. Spec. Mstr. Feb. 9, 2015).

**B. This Claim Lacked Reasonable Basis from the Date of Filing**

Because Petitioner was not successful in bringing his claim, he must demonstrate that his claim had reasonable basis to receive fees and costs. But Petitioner's claim lacked a reasonable basis upon filing—well before I or former Chief Special Master Dorsey were assigned to the matter—and he never presented evidence establishing the contrary.

First, A.S.'s autism diagnosis created almost insurmountable problems for his claim. When Petitioner filed his claim in 2016, he maintained that A.S. neither had an ASD nor had he ever been diagnosed with one. But Petitioner eventually conceded this was not true, as A.S. had been diagnosed with ASD in *2015*. Petitioner tried to distance his claim from the ASD diagnosis by claiming encephalopathy, but his alternative causation theory still relied on "the very same processes known to be involved in the development of autism." Weiler First Rep. at 5.

As explained in my decision, claims that ASDs are caused by vaccines are historically unsuccessful. The OAP tested two main theories that autism could be caused by vaccines. No test claims were found in favor of petitioners. Later, numerous other claims sought to set themselves apart from the causation theories in the OAP—they were also unsuccessful. *See, e.g.*, *Rogero v. Sec'y of Health & Human Servs.*, No. 11-770V, 2017 WL 4277580, at *4–5 (citing eighteen unsuccessful post-OAP autism claims that went to hearing and thirteen post-OAP autism claims that were rejected without a hearing), *mot. for review denied*, slip op. (Fed. Cl. Jan. 11, 2018), *aff'd*, 748 F. App'x 996 (Fed. Cir. 2018). Since then special masters have reasonably questioned whether such claims could still be brought with reasonable basis. *See, e.g.*, *Hashi v. Sec'y of Health & Human Servs.*, No. 08-307V, 2016 WL 5092917 (Fed. Cl. Spec. Mstr. Aug. 25, 2016); *Sturdivant*, 2016 WL 552529, at *20. This evolved into explicit warnings—that such claims would lack reasonable basis unless they could be set apart from previously decided claims by persuasive evidence. *Hooker v. Sec'y of Health & Human Servs.*, No. 02-472V, 2017 WL 3033940, at *7–8, 22 (Fed. Cl. Spec. Mstr. Apr. 11, 2017) (warning that weak claims involving ASDs will likely lack reasonable basis in the future).

---

[5] The Court of Federal Claims has also made it clear that petitioners cannot successfully recast a claim that a vaccine caused autism into an encephalopathy claim, based on the logic that the neurologic symptoms associated with an ASD reflect an underlying brain injury. *See, e.g.*, *Cunningham v. Sec'y of Health & Human Servs.*, No. 13–483V, 2017 WL 1174448, at *5 (Fed. Cl. Jan. 25, 2017).

I found that Petitioner had failed to set his case apart from previous autism type cases. Decision at 14–15. This was the type of theory that Special Master Dorsey and I had warned likely lacked reasonable basis. *See* (ECF No. 17); (ECF No. 28); (ECF No. 30); (ECF No. 33); (ECF No. 53). Moreover, the explicit deficiencies in this kind of petition were, or should have been, known to Petitioner (or at least to his counsel, who is an experienced Vaccine Program litigator) *at the time the claim was filed*. Petitioner's counsel, Clifford Shoemaker, has practiced in this program since the early 1990s. *See, e.g.*, *Cousins v. Sec'y of Health & Human Servs.*, No. 90-2052V, 1991 WL 211901, at *1 (Fed. Cl. Spec. Mstr. Sept. 27, 1991) (Clifford Shoemaker listed as petitioner's counsel). Mr. Shoemaker also received recent warnings, around the time of filing this case, about ASD claims and reasonable basis. *See, e.g.*, *Hooker v. Sec'y of Health & Human Servs.*, No. 02-472V, 2017 WL 3033940, at *7–8, 22 (Fed. Cl. Spec. Mstr. Apr. 11, 2017) (finding that no reasonable basis for the claim existed after the OAPs became final and warning counsel of defects in the claim and autism type claims in future cases). This is especially true since it appears Petitioner had record evidence in his possession at the time of filing that established A.S. had been diagnosed with autism; even if Petitioner disputed the diagnosis, it was an evidentiary matter that cast in stark terms the deficiencies the claim would possess if an injury *other* than autism itself was not alleged. Thus, I concluded that support for Petitioner's alternative causation theory lacked "foundational objective support for its assertion in the first place." Decision at 16. Upon review my conclusion remains the same.

Second, there is a total lack of evidence to support an encephalopathy diagnosis. In rare cases petitioners have succeeded in establishing a vaccine-caused encephalopathy that produced developmental regression or ASD-like symptoms. These rare cases were Table claims, and they underscore the importance of evidence of acute and/or immediate encephalopathy precipitated by a close-in-time vaccination. *See Wright v. Sec'y of Health & Human Servs.*, No. 12-423V, 2015 WL 6665600, at *10 (Fed. Cl. Spec. Mstr. Sept. 21, 2015) (finding that a child with ASD-type symptoms experienced a Table encephalopathy, and noting that he convulsed and vomited during car ride home after receiving vaccinations (possibly evincing a brief seizure), then became listless, unresponsive, and "basically catatonic" by the following day); *Bast v. Sec'y of Health & Human Servs.*, No. 01-565V, 2012 WL 6858040, at *35–36 (Fed. Cl. Spec. Mstr. Dec. 20, 2012) (discussing case report about Hannah Poling, a successful Vaccine Program claimant who alleged a Table encephalopathy claim for her autism-type symptoms; noting that Hannah developed a high fever, inconsolable crying, irritability, and lethargy, and refusal to walk within forty-eight hours after vaccination), *appeal dismissed sub nom. M.S.B. ex rel. Bast v. Sec'y of Health & Human Servs.*, 579 F. App'x 1001 (Fed. Cir. 2014).

In sum Petitioner's claim rested on two theories of causation: (1) the same processes known to be involved in the development of autism caused A.S.'s injury; or (2) A.S. suffered an encephalopathy which in turn caused his (autism-like) injuries. The first theory did not set itself apart from the many well-reasoned autism or autism like decisions that have been historically unsuccessful. The second theory did not show any persuasive evidence of an encephalopathy. Thus, Petitioner's claim lacks the factual and medical support to have reasonable basis.

I am reluctant to deny fees in their entirety, and in most cases endeavor to find some basis for at least a partial fees award. *See, e.g.*, *Curran v. Sec'y of Health & Human Servs.*, No. 15-804V, 2016 WL 4272069, at *3 (Fed. Cl. Spec. Mstr. June 22, 2016) (awarding partial attorney's fees; claim had reasonable basis upon filing, but lost it after a certain date), *aff'd in part*, 130 Fed. Cl.

1, 8 (Fed. Cl. 2017) (affirming findings with respect to reasonable basis). But the nature of this claim, in conjunction with the matter's procedural history, do not support such lenience here. Not only is the claim devoid of objective evidentiary support, but Petitioner has had *many chances* to dismiss this case. The fact that the reasoned views of two special masters were largely ignored (especially given the context of the claim) cannot be justified, even when taking into account the reasonable desire of Program attorneys to serve their clients in a zealous and ethical manner.[6] This claim should not have been filed.

## CONCLUSION

Based on my review of the factual and procedural history I conclude that this claim was unsupported by objective factual basis or medical support. Further, Petitioner was on notice of glaring deficiencies in his case early on, frequently reminded of those deficiencies, and informed of what could be done to remedy them. Although Petitioner did present some evidence in support of his claim, that evidence was severely undercut by more reliable competing evidence and numerous well-reasoned decisions of the Vaccine Program. In sum, I find that Petitioner never had a reasonable basis for their claim. Accordingly, Petitioner's motion for attorney's fees and costs is DENIED.

**IT IS SO ORDERED.**

                                                        /s/ Brian H. Corcoran
                                                       Brian H. Corcoran
                                                       Chief Special Master

---

[6] I also note that my denial of fees is not intended to sanction any specific attorney misconduct in this case. However, the reasonable basis standard does not support a fee award for a petitioner asserting an autism injury claim—and where numerous opportunities to dismiss the claim (or simply to withdraw) were not acted upon, counsel must unfortunately bear the cost having opted to proceed.